May it please the court. My name is Nick Ackerman. I represent the appellant Dan Zong. We've reserved one minute for rebuttal. We have set out in our papers that the district court erred on a number of critical points. What is it that you want? We want our client to be released on bail. We want this court to actually enter an order releasing him on bail. I think the critical point is that the district court erred on a number of critical points. So you don't want us to send something back for reconsideration, to open a reconsideration hearing, to open a hearing so that the district court can reconsider new evidence? Because the district court has already stated on the record very explicitly that even if you don't have a question. Can you hear me, Mr. Ackerman? What's that? Can you hear me? I can hear you. All right. So you do not want us to send this back so that the district court can reconsider anything. You want us to order your client released on bail conditions? That's correct, Your Honor, specifically because she said if the bail issue were reopened, it would find in favor of detention. I think it would be a nonstarter to go back with a reconsideration. I mean, in fact, the real critical point here is on the bottom line is that there are clearly a combination of conditions that would assure Mr. Zong's presence in court. Pretrial services has recommended home confinement. We have proposed an added layer of protection through guidepost solutions. A group of former assistant U.S. attorneys from both the southern and eastern district, they have a perfect track record in assuring that defendants show up for trial. Significantly, the government does not attack guidepost solutions' ability to do this. Instead, it attacks the propriety of the use of a private security firm. But it cannot dispute that Judge Raggi, in her opinion, in Sobnani, approved the use of a security firm to monitor home detention in circumstances that are nearly identical to these. That a security firm can be paid to monitor the home confinement does not somehow transform. How often does that happen? Quite a bit, actually. And I think we've listed a number of those in our papers, Your Honor. This is not an unusual circumstance. I mean, part of the argument here is, well, how can rich defendants have the ability to go out and get a private security firm? But as Judge Raggi pointed out in Sobnani, look, it goes the other way, too. It cuts both ways in the sense that if the person didn't have access to funds, then they would more likely be out on bail. So it goes both ways. And it's certainly a proper circumstance in this district and this circuit. I mean, this has happened a number of times, which we've pointed out to the Court. Have we ever done that directly, to your knowledge? That is to say, just we did it without either ordering a district court to do it or asking the district court to reconsider? In Sobnani, you basically send it back to the district court ordering bail, saying that you would maintain jurisdiction over this matter. If there were any issues, there was a plan in place to do that. There's a plan in place to do that now. The district court wouldn't even hear us on the plan that we had. She wouldn't hear us on all of the new facts that we had uncovered since the time of the last hearing before Judge Johnson. And that's why I think it's extremely important, if this goes back to the district court, that this court retain this panel, retain jurisdiction to ensure that this happens, exactly as happened in Sobnani. It's extremely important in this case. Do you agree that there's some risk of flight? To the extent that there's a risk in flight, we have covered that in the sense that pretrial services has recommended pure home detention. We've added an extra layer to that with a private security firm that will ensure 24 hours a day total monitoring that this defendant does not leave his home. Under what circumstances would, in a white collar context, would a private security firm, the proposal that you've got or that you're pitching to us, not make sense? When it would not make sense? Yeah. I can't think of one, because if it's – So in every case where someone can afford or someone's family can afford a private security firm, it makes sense? It certainly does make sense. I don't – Why doesn't it happen every time? I can only think of one instance where it didn't happen. I think it was Judge Berman. In that particular case, the defendant did not have any ties to the community at all. Mr. Zong here has plenty of ties. He's been here for the last 10 years as a permanent resident. Why would it matter? So if someone does not have any ties to the community but can afford a private security firm to imprison him or her – effectively, that's your argument – then why should it matter? It shouldn't, because if they can keep them in that one spot, then it shouldn't matter. So a very wealthy person with no ties to the community can have access to their penthouse apartment with a private security firm. That's the equivalent of the BOP for wealthy people. That would be absolutely proper under Sub 90. And certainly in this case, it's totally proper, particularly in light of the fact that the government's case is extremely weak. I mean, that's a point that I haven't even mentioned, is that throughout this whole process, the government keeps trotting out the idea that this case is extremely strong. They go with this forced labor situation. We've come up with evidence from four or five different of the Chinese workers who have basically told us that there was no forced labor. What's the current estimate, if you can tell me, of how long between now and trial? A long, long time. In fact, that is a good point, because when this first came up before Judge Johnson, the government portrayed this as a simple, quick trial – indictment in 30 days, a trial in one to two weeks – and then we find out on making this a complex case under the Speedy Trial Act that there's a possibility of some kind of classified information which they have yet to identify. In a long, long time, that describes how long – how long since my birth. That's a long, long time. To be very specific, we have a SIPA hearing scheduled not until May of this year. So from that time to the time that Mr. Zong has been arrested, we're talking six months. Then if we're just talking a SIPA hearing, we're then into discovery, which means we then have to make motion. So we're looking at an extremely – I mean, I would think a year from then that we'd be going to trial. I asked for a trial immediately at arraignment, but this looks like it's going to go for a year, a year and a half, which directly implicates Mr. Zong's due process rights under these circumstances. So, yeah, that was a fact that we had no idea about until December 5th when we got a letter from the government saying that they were going to designate this as a complex case. The other points here that I just want to emphasize is that we were supposed to have a hearing before the district court on January 9th. The district court entered an order on this – So you're asking us to order bail. That's right. We're asking – we're asking this Court to order bail. What's the next point? I think the other point on the flight risk which has been raised, that we didn't have the opportunity to show the court below that we have actually cut off Mr. Zong from all of his assets, that we've done that. It's taken time, but we can actually show every single dime and the fact that he can no longer write checks or have anything to do with his business. The district – What's the total value of his business? I'm not sure the value of his business, but there's – The value of his assets. I think it's somewhere around $500,000 or more. I mean, you've got – well, if you take the house, I mean, if you count up all the assets, all of these things we're willing to put up as bail. We have no problem taking every last dime except for money that, you know, his wife can use to live on for living expenses. We have no problem putting that up for bail. You've reserved one minute for rebuttal, so we'll hear whatever you have left. Okay. Thank you. Mr. Richardson. May it please the Court. My name is Ian Richardson. I'm an assistant United States attorney for the Eastern District of New York. The defendant presented the same bail package to three different federal judges before he asked Judge Irizarry to reopen the detention hearing and to order him released based on the same bail package. Judge Irizarry correctly refused to reopen Judge Johnson's detention order, which was amply supported. So he's making a very – a significant argument in the sense that in every white-collar case, regardless of the degree of risk of flight, if someone can pay for a private security firm, they should – that should be the condition of bail. That is, that they should be effectively imprisoned in their own home with the monitoring by a firm. What's the government's answer to that? Your Honor, I think that that's inappropriate to create a blanket rule that white-collar defendants or defendants who are rich enough to pay for that sort of – Well, what about Subnani? So in Subnani, the government conceded – Subnani. Subnani, the government conceded that that was an appropriate condition of detention. And that's why the – that's why the court of appeals – Is that a mistake? That was a decision that was made in the individual facts of that case, Your Honor. And I'm not here to opine about what might be appropriate in other cases. What I can say is in this case, that would not be inappropriate. Since your time is limited, I wish you'd turn to the question of the particular risk of flight in this case because I would assume that matters a lot in the calculus, at least at the district court level. That's correct, Your Honor. The risk of flight in this case, as Judge Irizarry found and as the other federal judges who considered the bail proposal found, is significant. The defendant is a former diplomat of the People's Republic of China. He has significant ties to the People's Republic of China, including having spent over a decade working at PRC diplomatic facilities in the United States to which he would have recourse were he to flee. In addition to that, he has numerous wealthy family members. He talks about his assets in the United States being – Tell me what you mean by recourse. You don't mean he could just hide there. You mean they would help him get out. Potentially. Potentially both. As we pointed out in the district court, he has – his business has had offices at the PRC's mission to the United Nations. He's rented rooms, apparently, at the PRC consulate in diplomatic facilities where the government would not be able to intrude under principles of consular protection. So that is a significant concern in this case. But one of the issues that Mr. Ackerman didn't address when he discussed the defendant's access to resources and which the government has consistently argued is a significant risk of flight throughout the proceedings in the district court is that the defendant has family members who are billionaires in China who are apparently willing to foot the bill for $144,000 a month private security guards. Yet the assets that he disclosed amount to about $500,000. It doesn't make sense. It doesn't add up. The money that he was willing to put up in the district court doesn't match his assets. And as we pointed out, what he told pretrial services – Well, let me answer the following question. Has there ever been a case where a defendant who had a private security firm in connection with a package that's being proposed here fled? Your Honor, I'm not specifically aware of a case in which he fled. I am aware that in one case in the Southern District of New York, the agents were able to actually observe the private security firm that was responsible for the defendant in that case, assisting the defendant to thwart the conditions of his release, which required him to remain at home or, unless permitted out for attorney visits, they monitored the private security firm actually taking him to a restaurant in Chinatown. And that was the same, the same private security firm that the defendant has proposed to use in this case. So this is a concern, I think, in that, as we pointed out, there are numerous conflicts of interest in using a private security firm. It injects the district court into overseeing a function that is appropriately overseen by professionals at the Bureau of Prisons and the United States Marshals Service. It creates a whole host of new issues for the district court to deal with and address. They go to – they create a further risk of flight, and really there's a bunch of unresolved issues. What would happen if it did? Do you agree with your adversary as to what a long, long time means in this case? Your Honor, what I can say is that we are seeking to move this case along as quickly as possible. We've already produced voluminous discovery. We're in jar and dice versus jar and dice, too. Never mind. Yeah. Well, no trial date has currently been set, but there is a Section 2 status conference scheduled in May. We hope to move this case to trial before the end of the year. I can't say precisely when that would occur, but I think it's evident from the transcripts that Judge Irizarry is taking very careful stewardship of this matter, and she intends to bring this case to trial very quickly, as quickly as possible. And really, the issue of pretrial delay doesn't go to the factors the court is supposed to consider in determining whether the defendant is at risk of flight. That goes to a due process challenge, which the defendant has never presented to the district court, and there's no such thing as a prospective due process challenge. It may be a strange time to bring up this question, but can you very briefly summarize what this defendant is being charged with having done? Yes, I will, Judge. This defendant is charged with having been the principal of a Chinese construction business that used Chinese laborers who were given special diplomatic visas to do work on Chinese diplomatic facilities within the United States, and used them instead to perform work on private residences and private projects. And among the means that they used, that they caused those workers to do that, was that they used contracts that would essentially cause them to forfeit their homes in China, cause their families to bear significant financial burdens if they were to do anything that violated the terms of those contracts, and there's other means that are alleged in the complaint as well. The crimes in which the defendant is charged carry a presumption under the statute of detention, and that was something that Judge Johnson found in his detention order, which the defendant has never appealed. That presumption of detention certainly bears in the analysis here as to whether the defendant or whether any conditions of release will reasonably assure that the defendant's appearance is required. And if there's nothing further, Your Honor. Thank you. Mr. Ackerman. Yes. Thank you very much, Your Honor. Let me just start off by this presumption. Sobnani makes it pretty clear that under circumstances similar to this where human trafficking is alleged, there is no such presumption, and it says that explicitly. In fact, this case is so different than Sobnani where they actually identified who the victims were, the names were in there, the people were in there, they were found in closets. In this case, we've got people who came in to work that were doing work all over the country, that traveled around the country. We've got pictures of these workers at Niagara Falls, which is not a typical place where you have slaves hang out, which is what the government has tried to allege here. The idea that this private security firm that there is something wrong with it, let's start with the proposition that pretrial services here has recommended home detention. All we're doing is adding an extra layer to that home detention to make certain that this defendant will return and be there for all of the court appearances. The one incident that they represent about this individual going into a Chinese restaurant, that was under Judge Haight. There was nothing untoward about that. There was a problem with the defendant's daughter. He went in. It was all explained to Judge Haight. There was no action taken on that. It was perfectly proper. Again, another example of the government trying to make something out of nothing. And that's what this case was about. Sobnani, you actually have real evidence of human trafficking. Here, all of the evidence that's before this Court that's for real shows that there was no human trafficking. Thank you. Thank you. We'll reserve the decision.